UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

YONG OK SANKEY                              CIVIL ACTION

VERSUS                                      NO: 12-1135

METROPOLITAN LIFE INSURANCE                 SECTION: "J" (5)
COMPANY, et al.

**ORDER AND REASONS**

Before the Court are Plaintiff Yong Ok Sankey's Motion to Remand and to Award Attorney's Fees (Rec. Doc. 11) and Defendant Metropolitan Life Insurance Company's opposition to same (Rec. Doc. 13). The motion is set for submission on supporting memoranda and with oral argument held on June 20, 2012.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

In this civil action, Plaintiff sues under a life insurance

1

policy under which she was the named beneficiary and her deceased husband was the named insured. Plaintiff's husband, Donald Franklin Sankey, Jr., was employed by Textron, Inc. ("Textron") and had life insurance coverage through a group policy with Metropolitan Life Insurance Company ("MetLife") during his employment. Plaintiff alleges that after Mr. Sankey terminated his employment, Mr. Sankey converted his group policy into an individual life insurance policy. Plaintiff alleges that the policy was worth $188,000 and was issued for a premium of $638.56. After Mr. Sankey passed away on April 12, 2011, Plaintiff submitted a claim to MetLife under the individual life insurance policy, and she alleges that on June 21, 2011, she received a letter from MetLife informing her that MetLife had made a mistake in issuing the policy and would not honor the death coverage benefits of $188,000. She alleges that MetLife only agreed to pay a lesser amount of $55,200, unilaterally canceling the original policy and issuing a new policy pursuant to which the limited death benefit was paid.

Plaintiff commenced this action in state court against MetLife and the insurance agent who allegedly procured the individual policy on behalf of MetLife. Her petition alleges that MetLife breached its obligation to her in refusing to pay

the full amount of the policy, failing to act upon her application within a reasonable amount of time, and retroactively amending coverage. She alleges that MetLife is liable for the additional contractual amount representing the difference between $188,000 and the $55,200 she was paid. She also claims that she is entitled to penalties, damages, and attorney's fees. MetLife filed its notice of removal with this Court on May 3, 2012, and Plaintiff subsequently filed the instant motion to remand.

**PARTIES' ARGUMENTS**

Plaintiff argues that the Court lacks subject matter jurisdiction and therefore moves that her case be remanded to state court. She argues that MetLife's removal based on alleged federal question jurisdiction was improper because the policy in question is an individual life policy not covered by the Employee Retire Income Security Act ("ERISA"). Plaintiff avers that her claim does not involve a group policy procured on behalf of her husband through his former employer, but rather an individual policy that was converted from a group policy. She asserts that her husband terminated his employment with Textron and converted some of the coverage in the employer's group plan to a new, separate individual policy based on conversion rights; that the

contract is between MetLife and her husband; that her husband did direct pay of premiums from his bank to MetLife; that the individual policy did not require ongoing administration by Textron; and that the individual policy was issued its own policy number. Therefore, Plaintiff argues that her claim is not based upon a group employer plan regulated by ERISA, and federal question jurisdiction is lacking. Plaintiff also asserts that complete diversity is lacking and was not the basis for MetLife's removal. Thus, she argues that this matter should be remanded to state court.

Plaintiff further requests attorney's fees and costs. She avers that "[c]ounsel for MetLife in this case are no strangers to the lack of application of ERISA to a policy that had already been converted from a group plan to an individual policy and the law regarding same."[1] Plaintiff asserts that prior to filing the instant motion to remand, her counsel gave MetLife's counsel the opportunity to voluntarily remand, which offer MetLife's counsel declined. Accordingly, Plaintiff requests that the defendants be cast in judgment for the amount of time her counsel spent preparing the motion and supporting memorandum.

Defendant MetLife argues that the Court has federal question

---

[1] Rec. Doc. 11-1, at 4.

jurisdiction over this action. MetLife argues that ERISA provides the exclusive federal remedy for resolution of claims regarding the right to convert group life insurance to an individual policy, and therefore this case is removable due to the presence of federal question jurisdiction. MetLife argues that the issue of whether Plaintiff's husband was entitled to an individual conversion policy is dependent upon the terms of the ERISA plan that provided him with the right to convert. Therefore, MetLife argues that Plaintiff's claims relate to an ERISA plan, and thus ERISA preempts Plaintiff's state law claims and provides the exclusive federal remedy for their resolution. MetLife requests that the Court deny Plaintiff's motion to remand, but if the Court remands the case, to deny Plaintiff's request for attorney's fees because MetLife had a good faith basis for its removal.

**LEGAL STANDARD**

Generally, a defendant may remove a civil action filed in state court if a federal court would have had original jurisdiction. See 28 U.S.C. § 1441(a). Original diversity jurisdiction exists where the matter in controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. §

5

1332(a)(1). Original federal question jurisdiction exists for civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. A defendant bears the burden of proving by a preponderance of the evidence that jurisdiction exists. De Aguilar v. Boeing Co., 47 F.3d 1404, 1412 (5th Cir. 1995). The jurisdictional facts supporting removal are examined as of the time of removal. Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 883 (5th Cir. 2000). The removal statute should be strictly construed in favor of remand. Manguno v. Prudential Prop. and Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002).

"It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987). However, where Congress clearly manifests the intent to make causes of action within the scope of the civil enforcement provisions of ERISA removable to federal court, a case bringing such causes of action is removable regardless of whether federal preemption is obvious at the time a petition is filed. Id. at 66. ERISA's civil enforcement provision "completely preempts any state cause of action seeking the same relief, regardless of how artfully pled as a state

action." Copling v. Container Store, Inc., 174 F.3d 590, 594 (5th Cir. 1999), overruled on other grounds by Arana v. Ochsner Health Plan, 338 F.3d 433 (5th Cir. 2003). Thus, a civil action brought to enforce rights under an ERISA plan invokes federal jurisdiction. 29 U.S.C. § 1132(f); Copling, 174 F.3d at 594 ("If the plaintiff moves to remand, all the defendant has to do is demonstrate a substantial federal claim, *e.g.*, one completely preempted by ERISA, and the court may not remand."). Where complete ERISA preemption of a state law claim occurs, the claim is within the jurisdiction of the federal court. Day v. Lockheed Martin Corp., 428 F. App'x 275, 278 (5th Cir. 2011).

**DISCUSSION**

To determine whether Plaintiff's claims are completely preempted by ERISA, the Court must determine whether the claims fall within the scope of ERISA § 502(a)(1).[2] Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004). A claim falls within the

---

[2] ERISA § 502(a)(1) provides, in pertinent part:

> A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).

7

scope of § 502(a)(1) when the claimant is entitled to coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty independent of ERISA or the plan terms is violated. Aetna Health, 542 U.S. at 210. "In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." Id. Section 502(a)(1) permits a plan participant or beneficiary to sue to (1) recover benefits due under the plan, (2) enforce his or her rights under the plan, or (3) clarify his or her rights to future benefits under the plan. 29 U.S.C. § 1132(a)(1)(B). Thus, to determine where complete preemption exists, so as to create federal jurisdiction, the Court considers whether Plaintiff's claims are claims to recover benefits under or to enforce her rights under a plan regulated by ERISA.

The parties do not appear to dispute that the life insurance policy Mr. Sankey had while he worked at Textron was an ERISA-regulated plan. However, Plaintiff does not sue under that plan, but rather under the individual life insurance policy allegedly created when Mr. Sankey exercised conversion rights under the

ERISA group plan. MetLife argues that Plaintiff's claim arises under federal law because resolution of the claim requires interpretation of the group plan funded by MetLife to determine whether conversion from the plan to an individual life policy was proper. Mr. Sankey was a participant in Textron's group plan, which provided life insurance benefits, and the plan was funded and administered by MetLife.[3] Mr. Sankey applied to convert his supplemental group life coverage to an individual policy, which MetLife avers that it then erroneously issued.[4] MetLife cites language in the Textron group plan explaining that the appropriate conversion amount is decreased by the amount of the accelerated benefit paid.[5]

Thus, MetLife argues that although the law is unclear

---

[3] See Rec. Doc. 1-2, at 2, ¶¶ 3-5 (declaration of James McCarthy, Senior Technical Insurance Advisor at MetLife, attached to MetLife's notice of removal).

[4] See Rec. Doc. 1-2, at 3, ¶¶ 11-12 (McCarthy's declaration). MetLife avers that when it approved payment of an accelerated benefits claim to Mr. Sankey, MetLife explained the effects of this payment on Mr. Sankey's remaining group supplemental coverage. Rec. Doc. 1, at 3, ¶ IV (MetLife's notice of removal). MetLife avers that it subsequently erroneously issued an individual policy on the mistaken belief that, at the time of Mr. Sankey's application for conversion, he had optional life insurance under the group plan in the amount of $276,000. Id. at 4, ¶ V.

[5] See Rec. Doc. 1-3, at 44 (Textron Benefit Plan).

concerning whether claims for benefits under conversion policies are governed by ERISA, it is clear that rights to conversion are governed by ERISA.  MetLife argues that Mr. Sankey's right to convert from the group plan to an individual policy is governed by ERISA, and therefore this case was properly removable.  On the other hand, Plaintiff argues that there is no right-to-convert issue raised by her petition because Mr. Sankey obtained an individual policy and paid the premiums directly to MetLife.[6]

There is arguably some disagreement concerning whether claims for benefits under conversion policies are governed by ERISA.  See Painter v. Golden Rule Ins. Co., 121 F.3d 436, 439-40 (8th Cir. 1997) (concluding that claim for benefits under conversion policy was governed by ERISA because the policy came into being as a result of the insured's exercise of her right under the group policy to obtain the conversion policy); contra Waks v. Empire Blue Cross/Blue Shield, 263 F.3d 872, 874 (9th Cir. 2001) ("An individual insurance policy is not subject to ERISA solely because it was created through the conversion of a group policy that was subject to ERISA."); Demars v. CIGNA Corp., 173 F.3d 443, 450 (1st Cir. 1999) (holding that conversion policy

---

[6] Although her argument is a bit unclear, Plaintiff seems to argue that there is no right-to-convert issue present because MetLife actually permitted Mr. Sankey to convert.

is not ERISA plan and that state law claims relating to conversion policy are not preempted by ERISA). Plaintiff cites Shelton v. Standard Insurance Co., No. 07-6030, 2008 WL 2067024 (E.D. La. May 14, 2008), for the proposition that her husband's life insurance policy is not preempted by ERISA.

In Shelton, the plaintiff, who had been insured through his employer's group plan, exercised his option under the plan to purchase a conversion policy. Id. at *1. When he filed suit against the insurer in state court, the insurer removed the case to federal court, alleging diversity and federal question jurisdiction. Id. The insurer argued that because ERISA governed the original plan, it also controlled the conversion policy. After noting that the Fifth Circuit has not addressed the boundaries of ERISA preemption with respect to conversion policies, the court applied the Fifth Circuit's three-part test for determining whether a given plan is an ERISA plan subject to federal preemption: (1) the plan must exist, (2) the plan must be established or maintained by an employer for the purpose of benefitting the plan participants, and (3) the plan cannot fall into the Department of Labor's "safe harbor provision." Id. at *3.

Applying this test, the court in Shelton noted that the plan

11

certainly existed. The court found, however, that the second and third prongs revealed that the conversion policy was not an ERISA plan. The court noted that the plaintiff had exercised his option to insure through the conversion policy and had paid all premiums directly to the insurer. Further, the plaintiff's former employer was not involved with administration of the policy. Thus, the court found that the conversion policy had been established and maintained by the plaintiff, and the conversion policy was not an ERISA plan. Id. at *4. The court likewise found that under the third prong, because the insured paid all premiums directly to his insurer, and because he voluntarily converted, the "safe harbor" provision applied. Id.[7] However, the court noted that the question was whether ERISA preempted claims under the conversion policy, "not whether ERISA governs the right to convert." Id. at *3 n.5; see also id. at *5 ("Clearly, a suit regarding the right to a conversion policy is

---

[7] The safe-harbor contains an additional four (4) factors to determine whether an insurance policy is subject to ERISA: (1) does the employer contribute to the plan; (2) is participation voluntary; (3) is the employer's role limited to collecting premiums and remitting them to the insurer; and (4) does the employer receive profit from the plan? Shelton, 2008 WL 2067024, at *4.

not the same as a suit to enforce the terms of an already obtained conversion policy.").

Therefore, the Court may not need to reach whether the conversion plan at issue is an ERISA-regulated plan that would invoke federal preemption. Rather, as MetLife argues, if Plaintiff's claim is essentially a suit regarding the right to convert from Mr. Sankey's ERISA plan to an individual life insurance policy, then federal jurisdiction may exist by virtue of complete federal preemption. MetLife cites White v. Provident Life & Accident Insurance Co., 114 F.3d 26 (4th Cir. 1997), in which the claimant sought a declaration that he was entitled to life insurance benefits under both a group policy and an individual conversion policy. The terms of the group policy permitted employees who were no longer employed by the company to apply for a conversion policy. Id. at 27. After discovering that it had made a mistake in issuing the conversion policy, the insurer notified the insured that he could not maintain simultaneous coverage under both the group and conversion policies. Id. After the insured filed a declaratory action in state court, the insurer removed the case to federal court on the grounds that the insured's claims were preempted by ERISA. Id. On summary judgment, the court concluded that ERISA governed the

case because ERISA governs the right of conversion from a group policy to an individual policy. Id. at 28. Because the insured's rights were clearly related to the conditions placed by the group policy on the right of conversion, the insured's claims were governed by ERISA. Id. A similar result obtained in Pergosky v. Life Insurance Co. of North America, No. 01-4059, 2003 WL 1544582 (E.D. Pa. Mar. 24, 2003), which MetLife also cites. See Pergosky, 2003 WL 1544582, at *6 (where the plaintiff's claim for benefits related to conditions placed by the group plan on the right of conversion, the claim was governed by ERISA).

Where both parties to an insurance contract would not have agreed to the contract had they known the proper construction of the group policy, there is a mutual mistake about the scope of coverage such that the disadvantaged party is entitled to avoid the contract. Ramsey v. Colonial Life Ins. Co. of Amer., 12 F.3d 472, 480 (5th Cir. 1994). Here, MetLife alleges mistake as to the scope of coverage under the Textron group plan. The Court finds MetLife's argument persuasive, that even though Plaintiff's petition designates her claim as one concerning a non-ERISA plan, effective resolution of that claim requires judicial consideration of whether Mr. Sankey had a right to convert based

14

on the Textron group plan. The Court agrees with the reasoning of White that such a right to convert from an ERISA plan presents a claim that is preempted by ERISA. See also Wright v. Anthem Life Ins. Co. of Ind., No. 399CV33-P-A, 2000 WL 870807, at *7 (N.D. Miss. Jun. 14, 2000) ("Claims arising from the right to convert to an individual policy are grounded in ERISA and are to be decided by reference to the terms of the ERISA plan.") (citing 29 U.S.C. § 1162(5) (providing conversion options in ERISA plans)); Gabner v. Metro. Life Ins. Co., 938 F. Supp. 1295, 1302 (E.D. Tex. 1996) (right to conversion to an individual life insurance policy was governed by ERISA).

Although Plaintiff argues that this case does not present a right-to-convert issue because MetLife did not alter the conversion policy until after Mr. Sankey's death, Plaintiff acknowledges that MetLife unilaterally canceled the policy. Rec. Doc. 1-1, at 4, ¶ XII. Whether MetLife properly canceled the individual life policy depends upon construction of the conversion rights enumerated in the Textron group plan. Accordingly, the Court finds that Plaintiff's claim, which requires the interpretation of ERISA plan conversion rights, is preempted by ERISA, such that the Court has jurisdiction.

## CONCLUSION

For all the reasons expressed above, Plaintiff's Motion to Remand and to Award Attorney's Fees (Rec. Doc. 11) is hereby **DENIED**.

New Orleans, Louisiana, this 19th day of June, 2012.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE