UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SANKEY                                          CIVIL ACTION

VERSUS                                          NO: 12-1135

METROPOLITAN LIFE INS. CO.                      SECTION: "J" (1)
ET AL.

### ORDER AND REASONS

Before the Court are Defendants' **Motions for Summary Judgment (Rec. Docs. 39, 40)**, Plaintiff's opposition to both **(Rec. Doc. 42)**, and Defendants' reply to same **(Rec. Doc. 48)**. Defendants' motions were set for hearing on April 10, 2013, on the briefs. The Court, having considered the motions and memoranda of counsel, the record, and the applicable law, finds that Defendants' motions should be **GRANTED** for the reasons set forth more fully below.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

In this civil action, Plaintiff sues on a life insurance policy under which she was the named beneficiary and her deceased husband was the named insured. Plaintiff's husband, Donald

1

Franklin Sankey, Jr. ("Mr. Sankey"), was employed by Textron, Inc. ("Textron") and had life insurance coverage through a group policy with Metropolitan Life Insurance Company ("MetLife") during his employment. Plaintiff alleges that after Mr. Sankey terminated his employment, he converted his group policy into an individual life insurance policy. Plaintiff asserts that the policy was worth $188,000 and was issued for a monthly premium of $638.56. After Mr. Sankey passed away on April 12, 2011, Plaintiff submitted a claim to MetLife under the individual life insurance policy. Plaintiff alleges that on June 21, 2011, she received a letter from MetLife informing her that MetLife had made a mistake in issuing the policy and would not honor the death coverage benefits of $188,000. She asserts that MetLife only agreed to pay a lesser amount of $55,200, unilaterally canceling the original policy, issuing a new policy pursuant to which the limited death benefit was paid, and issuing Plaintiff a check for the unused premiums.

Plaintiff commenced this action in state court against MetLife and Roland Rusich ("Mr. Rusich"), the insurance agent who allegedly procured the individual policy from MetLife. Her petition alleges that MetLife breached its obligation to her by refusing to pay the full amount of the policy, failing to act

2

upon her application within a reasonable amount of time, and retroactively amending coverage. She alleges that MetLife is liable for the additional contractual amount representing the difference between $188,000 and the $55,200 she was paid. She also claims that she is entitled to penalties, damages, and attorney's fees. MetLife filed a notice of removal with this Court on May 3, 2012, asserting that federal jurisdiction was proper under ERISA. On June 6, 2012, Plaintiff filed a motion to remand. On June 19, 2012, the Court issued an Order and Reasons denying the motion to remand and finding that federal jurisdiction was appropriate under ERISA.

Defendants filed the instant motions on March 26, 2013. Plaintiff responded in opposition on April 5, 2013, with Defendants replying on April 15, 2013.

## THE PARTIES' ARGUMENTS

Defendants argue that Plaintiff's claims against them should be dismissed as a matter of law. With respect to Plaintiff's claims against Mr. Rusich, Defendants argue that Plaintiff's state law claims against him are completely preempted by ERISA and, therefore, must be dismissed. Defendants contend that in the Court's June 19, 2012 Order and Reasons, it determined that this case fell within the scope of ERISA, thereby also effectively

determining that ERISA completely preempted any state law claims. Furthermore, Defendants argue that even if Plaintiff's claims against Mr. Rusich are not preempted, they are still without merit. With respect to Plaintiff's ERISA-estoppel claim, Defendants argue that Plaintiff cannot meet all of the essential elements of that claim. In particular, Defendants assert that because Mr. Rusich represented to Plaintiff's late husband that he was receiving a $188,000.00 whole life policy, and because Plaintiff's late husband did in fact receive that policy, Mr. Rusich did not misrepresent any material facts. As a "material misrepresentation" is the first element of an ERISA-estoppel claim, Defendants assert that Plaintiff's claim against Mr. Rusich fails.

Likewise, Defendants also argue that Plaintiff's allegations that Mr. Rusich "'never communicated any policy coverage errors'" to her or her husband is of minimal significance. Defs.' Mem. in Supp., Rec. Doc. 40-1, p. 7. Defendants assert that MetLife did not discover the error until after Mr. Sankey's death. Defendants report that MetLife promptly notified Ms. Sankey at that time and, therefore, there was no error or omission on the part of Mr. Rusich. Furthermore, Defendants also assert that the terms of the Textron plan clearly explain that the amount available for

conversion must be decreased by any accelerated benefit received by the insured. Thus, they argue that Mr. Sankey knew that he was not entitled to the $188,000 whole life policy, because he had previously applied for accelerated benefits from his supplemental life insurance plan. Defendants contend that Mr. Sankey had a $276,000 supplemental life insurance plan, which he accelerated in December 2009. Defendants assert that upon applying for the accelerated benefits, Mr. Sankey received $220,800 of those benefits. Thus, they report that he was left with $55,200 in coverage that was eligible for conversion. As such, Defendants contend that Mr. Sankey "could not have reasonably or justifiably relied on any 'representations.'" Defs.' Mem. in Supp., Rec. Doc. 40-1, p. 8.

As to Plaintiff's claims against MetLife, Defendants propose the following framework for reviewing the plan administrator's interpretation of an ERISA plan. First, Defendants contend that the court must determine whether the administrator's decision was legally correct. Second, if the court determines that the administrator was legally incorrect, the court must review the decision for an abuse of discretion. Defendants assert that the administrators decision can only be overturned by the court if it was arbitrary and capricious. Thus, Defendants argue that

5

MetLife's determination that Mr. Sankey did not have the right to convert the group plan to an individual plan for $188,000 was legally correct. Further, they contend that if it was incorrect, there is substantial evidence to support the administrator's decision, thereby indicating that he did not abuse his discretion.

In addition, Defendants argue that Plaintiff's state law claims are preempted under ERISA. Likewise, they also contend that Plaintiff's claims for penalties/extracontractual and punitive damages must be dismissed because they are not an available remedy under ERISA.

In response, Plaintiff contends that this Court does not have subject matter jurisdiction over this case because it is not an ERISA case. Specifically, Plaintiff asserts that in this Court's previous Order and Reasons it only held that ERISA *may* apply. Plaintiff argues that there are new facts which clearly indicate that this was not an ERISA plan, but rather, an individual plan that is not subject to ERISA. As evidence, Plaintiff submits the deposition of Mr. Rusich. Plaintiff argues that Mr. Rusich's testimony "confirms that Mr. Sankey terminated his employment with Textron in July 2010 . . . and advised Textron of his desire to convert to an ***individual*** life insurance

policy." Pl.'s Opp., Rec. Doc. 42, p. 2 (emphasis in original). Thus, Plaintiff asserts that the plan in question was an individual plan, not a group plan, which is not covered under ERISA's statutory scheme. In support of this argument, Plaintiff relies on Miller v. Rite Aid Corp., 504 F.3d 1102 (9th Cir. 2007). Plaintiff asserts that in Miller, the court found that "converted plans are not ERISA plans." Id. at 1109. Thus, Plaintiff contends that the plan in this case, which is an individual plan that was converted from a group plan, cannot be covered under ERISA.

Furthermore, Plaintiff argues that MetLife has waived any claim that it can dispute a "right to convert" because MetLife allowed Mr. Sankey to keep the plan for eight months. Plaintiff also argues that Defendants are estopped from disputing the converted plan after Mr. Sankey's death. Plaintiff contends that under state law, because the obligation to pay benefits had come due, the insurer could not retroactively modify the policy and/or change the coverage. Lastly, Plaintiff asserts that if this action is an ERISA action, summary judgment is not appropriate because under ERISA, Defendants breached their fiduciary duties and, therefore, Plaintiff should be allowed to proceed with these fiduciary claims.

In their reply, Defendants argue that Plaintiff misunderstands the purpose of a conversion option in a group life insurance plan. Defendants report that Mr. Sankey's group plan contained an option to convert the plan into an individual plan. They assert that this option ensured that Mr. Sankey would not have to provide evidence of insurability to receive the individual plan. Defendant explains that the group plan stated that "the maximum amount of insurance that [Mr. Sankey] may elect for the new policy is the amount of [his] Life Insurance which ends under the Group Policy." Defs. Reply, Rec. Doc. 48, p. 2. Thus, Defendants argue that the Court has to interpret the group-ERISA plan in order to understand whether Mr. Sankey was entitled to the disputed individual policy. As such, Defendants assert that the "right to convert" is the central issue in this case and makes this case an ERISA case.

In addition, Defendants contend that Mr. Rusich's deposition adds no new facts to this case and is outside of the administrative record, thereby making it improper summary judgment evidence in an ERISA case. Defendants further argue that even if Mr. Rusich's testimony was admissible, it would not matter because it does not conflict with the administrative record which clearly shows that this is a plan covered by ERISA.

8

Lastly, Defendants contend that this Court has already distinguished much of the authority that Plaintiff cited in its previous Order and Reasons. Defendant also asserts that the additional sources cited are all easily distinguishable.

**DISCUSSION**

**A.   Subject Matter Jurisdiction**

Because the Court cannot proceed with the substantive analysis of this case if it lacks subject matter jurisdiction, it begins by addressing Plaintiff's arguments that despite the Court's findings in its June 19, 2012 Order and Reasons, it lacks subject matter jurisdiction. Plaintiff argues, as it did in the previous motion to remand, that ERISA does not govern this suit because it involves the benefits awarded under an individual plan. Defendants reiterate that this suit does not involve benefits due under an individual plan, but rather, concerns Mr. Sankey's right to convert his group plan to an individual plan for $188,000. Therefore, Defendants contend that this case concerns the right to convert a group plan and, as such, is governed by ERISA's statutory framework. For the reasons stated in the aforementioned Order and Reasons, this Court agrees with Defendants' assessment of this case. "Effective resolution of [Plaintiff's] claim requires judicial consideration of whether

9

Mr. Sankey had a right to convert based on the Textron group plan." June 19, 2012 Order and Reasons, Rec. Doc. 15, pp. 14-15. Thus, all of Plaintiff's state law claims against MetLife and Mr. Rusich are preempted by ERISA, and the Court has jurisdiction over this case.[1]

### B.   Summary Judgment

With the ERISA framework in mind, the Court now moves to Defendants' summary judgment arguments. Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All reasonable

---

[1] Inherent in this finding is the Court's recognition that Mr. Rusich's deposition does not substantively change this action in any way. Just as it is clear from the record that the plan in question was an individual plan, it is also undisputed that Mr. Sankey was only able to obtain this policy by virtue of his Textron group plan. The individual policy was a converted policy. As such, it is the terms of the group policy that govern its existence.

inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." Id. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. See Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by

11

submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  See id. at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.  See, e.g., id. at 325; Little, 37 F.3d at 1075.

### 1. Legality of Plan Administrator's Determination

Defendant argues that the plan administrator's decision to cancel Mr. Sankey's policy was legally correct and, therefore, that the Court must find in its favor on summary judgment. The Court agrees.

The district court reviews a plan administrator's decision to deny benefits de novo. Holland v. Int'l Paper Co. Ret. Plan, 576 F.3d 240, 246-47 (5th Cir. 2009). Where the benefit plan has given the administrator complete discretionary authority to determine eligibility for benefits and/or to construe the terms of the plan, the Court determines whether the administrator abused his discretion in denying a claim. Id. at 246. In the Fifth Circuit, courts use a two-step analysis to determine abuse of discretion. Vercher v. Alexander & Alexander, Inc., 379 F.3d 222, 227-28 (5th Cir. 2004) (citing Rhorer v. Raytheon Eng'rs and Const'rs, Inc., 181 F.3d 634, 639 (5th Cir. 1999)). First, the court evaluates whether the plan administrator's determination

was legally correct. Id. If the determination was legally correct, then the inquiry ends. Id. However, if the court determines that the administrator's determination was not legally correct, then the court determines whether the interpretation constituted an abuse of discretion. Id. In evaluating whether an administrator's determination is legally correct, the court considers "'(1) whether a uniform construction of the [plan] has been given by the administrator, (2) whether the interpretation is fair and reasonable, and (3) whether unanticipated costs will result from a different interpretation of the policy.'" Id. at 228 (quoting Lain v. UNUM Life Ins. Co. of America, 279 F.3d 337, 344 (5th Cir. 2002)). Where there have been no allegations that the construction of the plan was not uniform or that there were unanticipated costs, the court may direct its inquiry to the second prong of the test and evaluate whether the interpretation of the plan was fair and reasonable. See id. ("Applying these factors, the district court correctly determined that the essential inquiry here is whether MetLife's interpretation of the plan was fair and reasonable, as [plaintiff] did not allege that the construction of the plan was not uniform or that there were unanticipated costs.") Eligibility for ERISA benefits is governed by the plain language of the contract. High v. E-systems Inc.,

459 F.3d 573, 578-79 (5th Cir. 2006) (citing <u>Threadgill v. Prudential Sec. Grp., Inc.</u>, 145 F.3d 286, 292 (5th Cir. 1998)). The Fifth Circuit applies ordinary principles of contract interpretation when interpreting ERISA plans. <u>High</u>, 459 F.3d at 578-79 (citing <u>Wegner v. Standard Ins. Co.</u>, 129 F.3d 814, 818 (5th Cir. 1997)).

Textron's group plan gives the plan administrator discretionary authority to interpret the plan and to determine eligibility for benefits; therefore, the Court reviews the decision to cancel Mr. Sankey's policy under the abuse of discretion framework outlined above.[2] The record before the Court shows that through his group plan, Mr. Sankey had a $276,000.00 supplemental life insurance policy and a $138,000 basic life insurance policy.[3] On December 7, 2009, Mr. Sankey completed an Accelerated Benefits Claim Form, requesting acceleration of his supplemental life insurance policy.[4] On December 21, 2009, MetLife paid Mr. Sankey's accelerated benefits claim in the amount of $220,800.00.[5] At that time, it also sent Mr. Sankey a

---

[2] Defs.' Ex. A Part 2, Rec. Doc. 39-4, p. 9.

[3] Defs.' Ex. A Part 2. Rec. Doc. 39-4, p. 28.

[4] Defs.' Ex. A Part 2, Rec. Doc. 39-4, p. 32.

[5] Defs.' Ex. A Part 2, Rec. Doc. 39-4, p. 43.

14

letter explaining that due to the payment of his accelerated benefits claim, he only had $55,200 remaining in his supplemental group life insurance plan.[6] On September 3, 2010, Mr. Sankey applied for an individual life insurance plan with MetLife.[7] Mr. Sankey's application for insurance reflects that he requested a "Whole Life" insurance policy with a face value of $188,000.[8] Under the section entitled "policy options," Mr. Sankey chose "Group Conversion Only."[9] Likewise, the form also noted that the method used to arrive at the face value recommendation for the new individual policy should be "Group Conversion."[10]

The Textron group plan states that at conversion, "the amount to which You are entitled to convert under the section entitled LIFE INSURANCE: CONVERSION OPTION FOR YOU, will be decreased by: the amount of the accelerated benefit paid by [MetLife]; and the Interest and Expense Charge." Defs.' Ex. A-1 Part 1, Rec. Doc. 39-3, p. 44. Thus, as of September 3, 2010,

---

[6] Defs.' Ex. A Part 2, Rec. Doc. 39-4, p. 43.

[7] Defs.' Ex. A Part 2, Rec. Doc. 39-4, pp. 44-57.

[8] Defs.' Ex. A Part 2, Rec. Doc. 39-4, p. 45.

[9] Defs.' Ex. A Part 2, Rec. Doc. 39-4, p. 45. The Court notes that per Mr. Rusich's deposition it is clear that Mr. Rusich completed the application forms; however, Mr. Sankey signed the forms thereby indicating awareness of their content.

[10] Defs.' Ex. A Part 2, Rec. Doc. 39-4, p. 52.

under the plain terms of the group policy, because Mr. Sankey had previously accelerated his benefits under his supplemental life insurance policy, he only had $55,200 available to convert into an individual policy.[11] As such, the administrator's determination that Mr. Sankey did not have a right to an individual life insurance policy in the amount of $188,000 was legally correct and in keeping with the fair and reasonable terms of the plan.[12] Accordingly, the Court finds that as a matter of law, the administrator's determination should be upheld.

In making this determination the Court also finds Defendants' reliance on White v. Provident Life & Accident Ins. Co., 114 F. 3d 26 (4th Cir. 1997), persuasive. In White, plaintiff sued his insurer for coverage under a group life insurance policy and a converted individual life insurance policy. 114 F.3d at 27. The plaintiff, while retaining coverage under his group life insurance policy, had applied for and was

---

[11] The amount of the accelerated benefit payment was $220,800 of $276,000 of available coverage, thereby leaving $55,200 of coverage available. The Court notes that this calculation does not take into account the $138,000 basic life insurance policy under which Mr. Sankey had coverage. Neither party has asserted that this policy should have been taken into account in assessing the total amount of coverage available under Mr. Sankey's individual life insurance policy. Likewise it is clear from the record that MetLife fully paid the benefits due under Mr. Sankey's basic life insurance policy on June 14, 2011 and that the policy was never converted. Defs.' Ex. A-1 Part 3, Rec. Doc. 39-5, pp. 23-35; Defs.' Ex. A-1 Part 5, Rec. Doc. 39-7, p. 78.

[12] See Defs.' Ex. A-1 Part 3, Rec. Doc. 39-5, p. 38 (June 21, 2011 letter explaining reasoning for issuing new $55,200.00 policy to Mr. Sankey).

issued a converted life insurance policy. Id. Nevertheless, plaintiff's group policy provided that insureds could not maintain coverage simultaneously under both policies. Id. Approximately four years after issuing plaintiff the policy, the insurance company realized its mistake and notified plaintiff that he could not maintain coverage under both policies. Id. The insurance company repaid plaintiff's premiums on the individual policy and requested that the policy be returned. Id. Plaintiff refused. Id. The court found that the plain language of the group policy indicated that plaintiff had no right to a converted individual policy as long as he maintained his group insurance coverage. Id. at 28. As such, the court found that the administrator was correct in his determination that the individual plan should be returned, and that plaintiff was not eligible for benefits under the individual plan. Id.

In the instant matter, as in White, the issue of whether Mr. Sankey is entitled to $188,000 of coverage under the individual conversion policy is contingent upon the terms of Mr. Sankey's group plan. In this case, just as the insurance company in White mistakenly issued the plaintiff an individual conversion plan outside the terms of the group policy, MetLife also mistakenly issued a plan that was not allowed per the plain language of the

17

group policy. Furthermore, upon realizing the discrepancy, just like the insurance company in <u>White</u>, MetLife immediately notified Plaintiff of the error, issued the proper policy, and returned the premiums to Plaintiff.[13] Thus, as the court in <u>White</u> found that the plaintiff was not entitled to the mistakenly issued policy, this Court also finds that the Plaintiff in this case is not entitled to the $188,000.00 individual conversion policy. Rather, Plaintiff is only entitled to the $55,200 policy that should have been issued in the first place.

### 2. ERISA-Estoppel and/or Waiver

Plaintiff has argued that even if the Court finds that the plan administrator's interpretation was legally correct, it should find that Plaintiff is still entitled to the $188,000 individual conversion plan under the doctrines of ERISA-estoppel and/or waiver. The Court finds that Plaintiff's argument is without merit.

To establish an ERISA-estoppel claim in the Fifth Circuit, the plaintiff must establish that: (1) there has been a material misrepresentation; (2) he/she reasonably relied on the

---

[13] <u>See</u> Defs.' Ex. A-1 Part 3, Rec. Doc. 39-5, p. 38 (June 21, 2011 letter notifying plaintiff of the mistake, explaining that Mr. Sankey was issued a new policy, and documenting that MetLife would be sending Plaintiff an check for $4,467.35, which is the amount of the excess premiums paid for the mistakenly issued policy).

misrepresentation to his/her detriment; and (3) extraordinary circumstances existed. <u>Mello v. Sara Lee Corp.</u>, 431 F.3d 440, 444-45 (5th Cir. 2005). A "misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision." <u>High</u>, 459 F.3d at 579. "A 'party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party.'" <u>Id.</u> at 580 (quoting <u>Sprague v. GMC</u>, 133 F.3d 388, 404 (6th Cir. 1998)).

In the instant case, even assuming that MetLife, through Mr. Rusich, misrepresented a material aspect of the plan and that Plaintiff relied on it to her detriment, the Court cannot find that such reliance was reasonable. As has been noted, the plain language of the plan provides that the amount available for conversion to an individual plan is reduced by any accelerated benefit payment. Such information was available to Mr. Sankey and, therefore, it would not have been reasonable for him to rely on information to the contrary. Furthermore, Defendant has provided the Court with a letter dated January 4, 2010, in which MetLife explicitly explained to Mr. Sankey that his accelerated benefits payment had reduced his remaining supplemental life

insurance coverage to $55,200.00.[14] Thus, as of September 2010, when Mr. Sankey applied for the conversion plan, he was fully aware that he did not have $276,000.00 available to convert. Therefore, the Court finds that Plaintiff's ERISA-estoppel argument fails as Plaintiff cannot establish all elements of the claim.[15]

As to Plaintiff's waiver argument, in the Fifth Circuit, waiver is defined as "'a voluntary or intentional relinquishment of a known right.'" High, 459 F.3d at 581 (quoting Pitts v. Am. Sec. Life Ins. Co., 931 F.2d 351, 357 (5th Cir. 1991)). In the instant case, once MetLife discovered that it had issued the mistaken policy, it immediately canceled the policy and returned all of Mr. Sankey's premium payments. As such, the Court cannot say that MetLife acted intentionally to relinquish its rights and, therefore, the doctrine of waiver does not apply to this

---

[14] Def. Ex. A-1 Part 2, Rec. Doc. 39-4, p. 45. While the Court is aware that Plaintiff contests that Mr. Sankey ever read this letter, the Court also notes that Plaintiff has not provided the Court with any summary judgment evidence such as deposition testimony to corroborate that assertion. Furthermore, even if Mr. Sankey had not read the letter, he was still privy to the plain terms of the plan and could not reasonably rely on any representations contrary to the plan.

[15] The Court also notes that even if Plaintiff could establish that Mr. Sankey reasonably relied on the alleged misrepresentation, she has still failed to provide any evidence of "extraordinary circumstances" as required by the third prong of the estoppel test. See Mello, 431 F.3d at 443 (finding that repeated assurances that insured would receive a certain amount of benefits for a six-year period constituted extraordinary circumstances).

case. See Pitts, 931 F.2d at 357 (finding waiver had occurred only where an insurance company continued to accept premiums/cashed premium checks five months after learning that a policy was issued in error).

### 3. Extracontractual Damages and/or Penalties

Defendants also argue that Plaintiff's claims for penalties and damages should be dismissed as they are not allowed under ERISA. The Court agrees.

The ERISA statute states, in pertinent part, that a participant or beneficiary of the policy may file suit in order to recover, "benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has stated that the civil remedies provided by the statute were intended to be comprehensive and exclusive, explaining that, "Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." Mass. Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 146-48 (1985); see also Pilot Life Ins. Co., 481 U.S. at 54. In keeping with the Supreme Court's opinions, the Fifth Circuit has expressly found that ERISA does not allow for recovery of extracontractual, punitive, or compensatory damages.

Rogers v. Hartford Life & Acc. Ins. Co., 167 F.3d 933, 943-44 (5th Cir. 1999); Medina v. Anthem Life Ins. Co., 983 F.2d 29, 32-33 (5th Cir. 1993). Extracontractual damages are defined as more damages than a beneficiary would be entitled to receive under the terms of the ERISA plan. Nero v. Industrial Molding Corp., 167 F.3d 921, 931 (5th Cir. 1999). Thus, any damages Plaintiff seeks that are beyond the scope of what the Court could award under the life insurance plan should be dismissed. Likewise, as any penalties would also be beyond the scope of the ERISA plan, they should also be dismissed. Accordingly,

**IT IS ORDERED** that Defendants' motions are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against all Defendants are **DISMISSED with prejudice**.

New Orleans, Louisiana this 2nd day of May, 2013.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE